HANCOCK COUNTY *v.* JOHN W. SIMMONS.

TAXATION. *Assessment of land. Increase. Improvements. Code* 1892, § 3799.

> Under Code 1892, § 3799, authorizing the board of supervisors to increase the assessment of land, in case its value be enhanced by the erection of improvements, the board is authorized to increase an assessment only when the improvements have been erected on the land, and is without authority to increase an assessment because the value of the land has been enhanced by the building of a railroad near it and the consequent growth of values in the neighborhood.

FROM the circuit court of Hancock county.

HON. WILLIAM T. McDONALD, Judge.

The board of supervisors of Hancock county at its August term, 1904, entered an order changing the land assessment of 1902, so as to increase largely the value of Simmons' land. He petitioned the board at its September term, 1904, to annul the order on the ground that the board was without authority to make it, and hence it was illegal. This petition was denied, and Simmons, appellee, appealed to the circuit court. The circuit court decided the case for Simmons, appellee, and the county appealed to the supreme court.

The case was tried in the circuit court upon the following agreed statement of the facts—viz.: "Simmons was the owner of the lots assessed, and in 1902 an assessment of the real estate of the county was made and approved, as required by law, and these lots assessed to appellee; that at that time the village of Picayune, in which the lots lay, had just been platted, and was nearly a wilderness, and the lots were then of the value assessed, but between the date of the approval of the assessment roll in 1902 and February 1, 1904, the lots had constantly increased in value, owing to the building of a railroad to the village (but

the railroad was not built on any of the lots), the sale and improvement of lots adjacent, the building of residences and a bank on adjacent lots, the building of hotels in the village, and a coal chute by the railroad company, and other public and private improvements and sawmills in the village and immediate proximity to the lots; that because of this enhanced value, and without previous notice to Simmons, and without his knowledge, the board of supervisors increased the assessments of the lots to what they were really worth at the time of the increased assessment; that there had been no improvements of any kind erected on the lots mentioned at the time of the increased assessment."

*W. J. Gex,* for appellant.

It being admitted that the property was of the value as raised by the board of supervisors, if the board had any authority to make the increase, then the petition should have been denied. Section 3788 provides that at the August meeting the boards of the several counties shall meet to equalize the assessment; sec. 3793 provides what shall be done at said August meeting, fully empowering the board to make such increase as shall be necessary to equalize the assessment. Again, sec. 3799 goes further and provides that at any time, if property has increased in value, because of the erection of improvements, the board may raise the assessment to its true value. Note here that the erection of improvements is not confined to the very lands themselves, and such statutes are always construed liberally.

The central and controlling idea of sec. 3799 is to ascertain the true value. The clause "or in the case of the increase of values by erection of improvements" is, for illustration, a cause for increasing, rather than a limitation upon the power to increase.

*Harper & Potter,* on the same side.

Appellant contends that Code 1892, § 3799, authorized it to increase the value of the property of appellee up to its true

value in 1904, since the same had decidedly increased since the regular assessment in 1902, as the direct and proximate result of other improvements, whether the same were made directly on the land in question, or any other lands immediately and closely contiguous thereto, so as to leave no doubt as to the cause of such increase in value.

It has always been the policy of the courts to construe such statutes as this in a broad and liberal spirit, with the purpose of carrying out the intent of the lawmakers of securing all property to be taxed at its real and true value. An assessment is, therefore, not a final judgment under this statute, and no man can ever complain if his property be not taxed beyond its true value. The statute expressly and intentionally omits the word "thereon," which appellee is bound to supply in order to give it the meaning that he contends for. The clause "or in case of the increase of values by the erection of improvements" is inserted here merely as an illustration of a cause for increasing the value, and it is not a limitation upon the power of the board to increase the value.

The increase in the case at bar is such an immediate, direct, and proximate result of the erection of the improvements on adjoining land as to leave no doubt that such improvements were the real cause of the increase in value and it would seem that it comes within the intent of the lawmakers, as manifested in Code 1892, § 3899. This has always been the uniform construction of the clause by the several boards of supervisors throughout the state, and they were authorized and directed so to construe it by the several opinions of the attorney-general of 1900–1901, pp. 101 and 104, which ruling has been followed by the present attorney-general.

*J. N. Flowers,* assistant attorney-general, on the same side.

Simmons could have applied to the board under sec. 3799 of the code to have his assessment reduced. This is the remedy

provided by the statute, and the one invoked by the taxpayers
and endorsed by this court in *Simmons* v. *Scott County,* 68
Miss., 37, and in *Jennings* v. *Coahoma County,* 79 Miss., 523.
And, as was held in those cases, an appeal lies to the circuit
court from an order of the board denying a petition to reduce
an assessment. Appellee had other remedies. He could have
enjoined the collection of the tax (if illegally assessed) under
sec. 483 of the code. *Ball* v. *City of Meridian,* 67 Miss., 91. Or
he might have resisted payment and tested the legality of the
assessment; or he might have paid and then proceeded to re-
cover it from the tax collector. *Tuttle* v. *Everett,* 51 Miss., 27;
*Vicksburg* v. *Butler,* 56 Miss., 72. See also Cooley on Tax-
ation, ch. 24.

But appellee adopted the novel remedy of petitioning the
board of supervisors to set aside the order entered at the former
term instead of availing himself of prescribed and approved
remedies. He did not petition the board to reduce the assess-
ment, as he might have done, but he petitioned that body to set
aside a former order. Because the former order sought to be
annulled related to an assessment for taxes, appellee insists
that the petition to set it aside is also a tax matter, and that
an appeal from the order denying the petition was properly
taken under sec. 80 of the code. But the order appealed from is
not an order raising an assesment, nor is it an order denying an
application to have an assessment reduced. It is not an order
relating to taxes.

Section 3799 of the code is one of the several statutes in-
tended by the legislature to execute the purpose of sec. 112 of
the constitution and to accomplish the general purpose of tax-
ation. This is shown nowhere better than in *State* v. *Tonella,*
70 Miss., 701, 708. The purpose of the entire plan is to make
all the property in the state bear its just proportion of the
burden of taxation. Every piece of property was intended, as
far as such result is practicable, to bear such part of the entire

burden as its value is of the value of all the property in the state. It is impossible for the system to be made absolutely perfect, but the best plan which has yet been tried is that which our legislature adopted.

We have a regular assessment of real estate only every four years. The infrequency of our regular assessments, the long period of time intervening, is a fact to be taken into consideration in passing upon our aiding or supplemental provisions. In many of the states assessments are made every year. Cooley on Taxation, p. 604. And it seems in nearly all the states the regular assessments are more frequent than in Mississippi. This doubtless accounts for the absence of such provisions as that now under discussion contained in sec. 3799. I have been able to find no similar provision discussed in the books. Since we have a regular assessment of land once in four years, the necessity for a statute like sec. 3799 is urgent, and the section becomes of large importance as a part of our system.

*Bowers, Neville & Griffith,* for appellee.

The point raised for appellant that the board had no power or authority at the September meeting to vacate their order of the August meeting is without merit. The order of the board of supervisors at the August meeting was simply void, void for two reasons—first, that even if they were able to proceed under sec. 3799, or under any other section at that time, and without notice to increase the assesment of the land of the appellee, it not being the year in which the land assessments had been made by the assessor, that the failure of the board to recite that the increase was made by reason of increase of value by erection of improvements, and it is well settled, and nothing could be better settled in this state, than that when the board of supervisors are proceeding in matters of this kind, the jurisdictional facts must appear of record. We cite two cases only out of a vast number of cases in Mississippi—to wit:

*Crafts* v. *DeSoto County,* 79 Miss., 618, and *Lester* v. *Miller,* 76 Miss., 309.

The failure of the board to recite the jurisdictional facts and make it appear of record renders any order that they enter simply void. They did fail to recite the jurisdictional facts, as will be shown by the record in the case.

Again, it appears in the agreed statement of facts that there were no improvements erected on these lots, and we say that their assuming to raise this assessment by virtue of the improvements, not on the lots themselves, is an excess of the authority of the board of supervisors, and that would make their actions simply void. *Jefferson County* v. *Grafton,* 74 Miss., 441 *et seq.,* and numerous decisions in the state of Mississippi, and of other states universally holding the same doctrine.

It is elementary law that void judgments can be vacated at any subsequent term; furthermore, that they ought to be. *Railway* v. *Bolding,* 69 Miss., 262; 17 Am. & Eng. Ency Law (2d ed.), 825; *Cotton* v. *McGehee,* 54 Miss., 621; *American, etc.,* v. *Thomas,* 12 L. R. A., 687.

The real question in this case is whether the erection of the improvements, not on the land, but on some adjacent tracts or lots, is the erection of improvements contemplated by sec. 3799, which would give the board of supervisors the statutory power and authority necessary to enable them to make this increase at any time.

If the building of a railroad through a county, or the erection of a city hall or bank in a town, or the establishment of a factory therein, or the building of a big lumber mill somewhere in some part of the county is to be an improvement such as to authorize the board of supervisors at any time to change the assessment of the lands on account of the erection of improvements in the vicinity, we ask, at what term of the board of supervisors, then, would it not be possible for them to increase the value of all the lands in the county on account of improve-

ments in each vicinity thereof? If such a construction of this statute were permitted, no man at any time could rest concerning his right with any degree of assurance that his assessment would not be changed without notice to him, and after the five days had elapsed for an appeal the said changed assessment would be absolutely *res adjudicata* and leave him without remedy. It would in effect deprive the citizens of the county of their right of appealing from the orders of the board of supervisors, and leave the matter of taxes at any time to be taken up by the boards, raised according to their peculiar ideas or whims, and make them the tribunal of final decision. Such a construction would discourage any man from owning property in this state. No man could own property in two counties, for the reason that he could not be in both counties at the same time twelve times a year to catch the board of supervisors to see that they did not raise the assessments of his lands on account of some improvements erected by some neighbor in the vicinity. There is a sentence in the opinion in the case of *Tunica County* v. *Tate*, 78 Miss., 294, on p. 299, which uses the words "improvements on land," and we say in all seriousness and with the utmost insistence that this is what is meant by this statute, and nothing else could be meant.

TRULY, J., delivered the opinion of the court.

Lands are assessed at stated times and in a manner expressly pointed out by statute. The plan devised by law covers every possible contingency to insure an accurate, full, and fair assessment of lands, and prevents the possibility, if all officers faithfully discharge the duties imposed upon them, of any land escaping taxation or being assessed below its just, proportionate value. Code 1892, § 3781, provides that the assessor shall not be paid unless he shall show on the assessment roll the assessment of every acre of land in his county; and it is made the duty of the board of supervisors to compare the assessment rolls with the township maps of the county, so that they may be ad-

vised whether or not the assessor has faithfully discharged his
duty. By sec. 3773 it is the duty of the assessor to list all lands,
whether the same have been returned to him by the owners or
not—to assess the same at the intrinsic value thereof—and it is
mandatory that he shall provide himself with all necessary
maps of the county, and of every portion thereof, and of every
city, town, or village therein. If, therefore, the assessor and
the board of supervisors scrupulously discharge their respective
duties in this regard, no acre of land, and no lot within a munic-
ipality, can escape being listed for purposes of taxation. If
the owner, as under the law he is required to do, returns his
lands, and fixes the value thereof, then every portion of the
county will bear its just proportion of the burden of govern-
ment. If the owner fails to return his lands, the assessor is
charged with the duty of listing them, and is granted authority
to fix the value; and in so doing he must take into considera-
tion the "improvements, the proximity to navigation, to a city,
town, village, or road, and any other circumstance that tends to
enhance its value." Should any owner put his property at a
lower valuation than, in the judgment of the assessor, it should
bear, he must so report to the board of supervisors, and it shall
be the duty of the board upon discovery of undervaluation of
any property to increase the same as it may deem just and
proper. If by inadvertence or other cause any land should,
notwithstanding the requirements above refered to, be omitted
from the roll, both the assessor and the tax collector are granted
authority to add the same to the roll. Code 1892, §§ 3800–
3804. All persons are charged with notice of the contents of
the rolls from the return and filing thereof in the office of the
clerk of the board of supervisors, and failure to file objections
thereto precludes them from questioning its validity after it is
approved by the board of supervisors or by operation of law.
The taxpayer who feels himself aggrieved by any valuation
placed on his property has his day in court at the regular
August meeting of the board of supervisors "in the years in

which a land assessment is made" to present his objection and
have corrections made in his assessment. After the land rolls
thus prepared have been examined by the board of supervisors,
the valuation of the property equalized, in the doing which the
board "may increase or diminish the valuation of any property
so that property of the same value shall be assessed for an equal
sum," and the rolls approved as required by law, this assess-
ment becomes, until the next general assessment of lands, made
every four years, the fixed and determined valuation for pur-
poses of taxation of the lands of the county. These assessments
can only be changed for the causes and in the specified cases
enumerated by Code 1892, § 3799. That section provides that
the board of supervisors shall not, after the approval of the
land roll, change an assessment, except in the following cases:
(1) Destruction or deterioration in value of any real estate by
any casualty; (2) overvaluation known to be such; (3) clerical
error in the assessment rolls; (4) change of ownership after
assessment; (5) increase of value by the erection of improve-
ments. In all such cases the board has the authority, on the
application of the party interested or otherwise, to change the
assessment at any time so as to reduce or increase it to the true
value of the property, or to cause the taxes thereon to be charged
to the true owner. These enumerated causes are restrictions
upon the power of the board of supervisors, and no assessment
of real estate after having once been duly and formally ap-
proved and adopted can be changed, unless the individual case
clearly constitutes one of the stated exceptions. *Anderson* v.
*Ingersoll,* 62 Miss., 73. It is the plain intent of the law that
each individual assessment must be passed upon solely with
reference to the facts of that particular parcel of property.
The causes enumerated as authorizing changes are not difficult
to understand. If real estate be destroyed, or its value de-
teriorated, by casualty, such as flood, which would lay waste
the land, or fire, which would destroy the improvements there-
on, the board is granted the right to extend relief. In case of

overvaluation, known to be such, where it is manifest that injustice has been done through mistake in calculation, proper reduction can be allowed. In case of clerical error correction can be made. In case of increase of value by the erection of improvements the property can be raised to its true value. It should be noted that the board is granted the right to raise the assessment only in one instance—*i. e.,* where the land has been increased in value by "the erection of improvements." The fact that the value of all the lands in the county has been enhanced by the mere natural growth of value incident to the development of the country gives the board no authority to raise the assessments, because the increase so caused is incident to all lands alike, and all share in the common good. The increase of value justifying a raise of assessment must be an increase of that specific parcel, and must arise solely from the erection of improvements. It is contended for appellant that the improvements need not be erected on the particular land in question, but that, if the increase of value be due to the "erection of improvements," the board is justified in raising the assessment to the true value of the property, without regard to the location of the improvements, whether on the land itself or in close proximity thereto. Upon an analysis of the section we do not think this contention can be sustained. It is true that the construction of a railroad through a village increases, perhaps appreciably, the value of all property within the corporate limits. But this is likewise true, though perhaps to a lesser extent, of property throughout the entire county, but it could hardly be contended that because a railroad traverses a county the board of supervisors would have the right at any time, and without notice, to arbitrarily increase the valuation of all the lands in the county, and yet this is the logical result of the argument presented by appellant. Again, it is not only the construction of a great public work, such as a railroad, which increases the value of adjacent property, but at least in

a limited sphere, and in close proximity to the improvements, the erection of an oil mill, a cotton mill, a factory, or an extensive manufacturing plant, incidentally yet inevitably increases the value of all the property in the town, and also, proportionately, other property lying some distance from the town. It also increases, to some slight degree at least, the value of all tax-bearing property in the county, because it reduces, to the extent which such new enterprises must pay taxes, the burden of taxation which rests upon such other property. There are many things which our law recognizes as elements to be considered in ascertaining the value of land, such as the improvements on the property itself, its proximity to navigation, to a city, town, or village, or public highway. Surely it could not be seriously insisted that the laying out of a public road in proximity to, yet not upon, a tract of land, so that transportation to a railroad or a town would be rendered easy, or the property made more accessible, would be sufficient to justify the board of supervisors to increase the assessment of the property near the public highway, on the theory that improvements had been erected. To render more manifest the fact that the position assumed by appellant is untenable, it is only necessary to contrast two sentences in the section granting the board of supervisors authority to make changes in assessments: The board is given authority to reduce an assessment in case of destruction or deterioration of any real estate by any casualty, or to increase the assessment in case of increase of value by the erection of improvements. If, then, improvements erected on one tract of land in proximity to another tract give the board the right to increase the valuation of such adjacent property, does it not necessarily follow that the deterioration by casualty of the value of one parcel of property would entitle the owner of adjacent property to ask for a proportionate reduction of assessment? If the proposition be sound upon the one hand, it must necessarily be equally as sound upon the other. Yet, if

this be true, every fire in a city which may destroy any manu-
facturing plant or other work of local importance would entitle
all other property owners in the municipality to a reduction of
their assessments; or every overflow or devastation by flood or
storm of one section of a county would give every other section
of the county the right to insist upon a reduction of assess-
ment on account of the deterioration of value of real estate by
reason of casualty. This construction of the section is too
refined and artificial to receive our approval. The conclusion
can only be arrived at by departing from the meaning of the
words in their ordinary acceptation and placing upon them a
strained and unnatural interpretation. It would furnish the
board no certain or definite basis on which to calculate the
real or supposed increase of value. It would submit the entire
subject to their own private and uncontrolled judgments, to be
exercised at any time without notice to the taxpayers interested.
This is not in accord with the well-defined scheme established
by the laws regulating assessments. But if we construe the
clause to mean that the assessment of the land can only be
raised when its value has been increased by erection of im-
provements thereon, the entire difficulty disappears, and the
harmonious details of the plan become apparent. Giving the
law this interpretation, the board has only to increase the as-
sessment of each tract by adding thereto the value of the im-
provements erected thereon. This is a simple mathematical
calculation, not requiring excursions into the realm of specula-
tion in an effort to determine how much one man's land has
been enhanced in value because his neighbor has erected a fine
dwelling or other improvements on his own.

So, too, this construction affords security to the taxpayer,
who, having discharged the duties imposed upon him by assess-
ing his land at the proper time, and seeing that the assessment
was regularly approved, is entitled to rest secure in the knowl-
edge that no officer has the power to increase the valuation of

his property as fixed, unless the same has been enhanced by the erection of improvements thereon. This is the manifest intent of the law. How different would be the case if the contention of the appellant was sound! No taxpayer would be certain that his assessment would not be increased at any meeting of the board, and without notice to him, because of some fancied benefit which he was supposed to derive from the erection of a railroad, or some other improvement, somewhere in proximity to his property. In such case eternal vigilance would be demanded of every taxpayer. Such was not the purpose and is not the true construction of the law. *Anderson* v. *Ingersoll, supra; State* v. *Tonella,* 70 Miss., 713 (14 South. Rep., 17; 22 L. R. A., 346); *Forsdick* v. *Quitman Co.* (Miss.), 25 South. Rep., 294; *Tunica County* v. *Tate,* 78 Miss., 298 (29 South. Rep., 74); *Simmons* v. *Scott Co.,* 68 Miss., 39 (8 South. Rep., 259). The appeal was properly prosecuted. *Jennings* v. *Coahoma Co.,* 79 Miss., 525 (31 South. Rep., 107).

*Affirmed.*